Joseph D. Gonzalez (CSBN: 198847)
Michael D. Peterson (CSBN: 285818)
**GONZALEZ LAW GROUP A.P.C.**
860B Hampshire Rd.
Westlake Village, CA 91361
T. 805.277.0236
F. 805.275.1105

Attorneys for Plaintiffs
PLANZ PINDER ENTERPRISES, INC.

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

# EASTERN DIVISION

| | |
|---|---|
| PLANZ PINDER ENTERPRISES, INC.<br><br>                    Plaintiffs,<br><br>       vs.<br><br>           RAMIRO MINERO and EMERITA MINERO; and DOES 1 through 50 inclusive,<br><br>       Defendants. | **COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF:**<br><br>**VIOLATION OF:**<br>**12 U.S. Code §3708;**<br>**UCC Article 9**<br><br><br>**JURY TRIAL DEMANDED** |

**COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF**
1

**PARTIES**

1.  Plaintiff PLANZ PINDER ENTERPRISES, INC. ("Plaintiff") is a California corporation who is a tenant on the property located at North East Connor Highway 223 Bear Mountain Blvd. Wible Rd. Bakersfield 93313.

2.  Defendant RAMIRO MINERO ("Defendant") is an individual and the husband of Emerita Minero, who is currently residing in the County of VENTURA, California for the purposes herein.

3.  Defendant EMERITA MINERO, ("Defendant") is an individual and the wife of Ramiro Minero, who is currently residing in the County of VENTURA, California for the purposes herein.

**JURISDICTION**

4.  Subject matter Jurisdiction is conferred upon this Court by 28 U.S.C. §§ 1331 as the action arises under the laws of the United States.

5.  Personal jurisdiction is conferred on this Court pursuant to the provisions of Section 84(B) of Title 28 of the United States Code.

**VENUE**

6.  Venue lies within this District pursuant to 28 U.S.C. § 1391(b)(2), as a substantial part of the events or omissions complained of occurred in this District.

## SUMMARY OF THE CASE:

7.  This case involves a secured creditor and tenant, Plaintiff.  Plaintiffs became a Creditor, tenant, and investor when Plaintiffs invested $50,000 and filed a UCC-1 filing on the property at issue. Plaintiffs occupied the property at issue located at North East Connor Highway 223 Bear Mountain Blvd. Wible Rd. Bakersfield 93313 California as a tenant until 2016 hereafter referred to as ("Subject Property").

8.  In addition to the UCC-Filing, Plaintiffs signed a ten (10) year lease agreement with renewal options for twenty-five (25) years ("the lease agreement") on the Subject Property to occupy, install an irrigation system, perform certain cosmetic work, such as fencing and conduct intra and interstate business transactions.

9.  Plaintiff adequately protected itself as an interested party and creditor, to ensure that the crops, irrigation system, and fencing would be protected pursuant to Article 9 of the Uniform Commercial Code.

10.Plaintiffs, as the tenant, were never noticed of an Unlawful Detainer action

**COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF**

being filed or served upon anyone or any entity, thereby losing their right to defend themselves and their tenancy. This, in conjunction with the following unlawful eviction resulted in, and continues to result, in damages.

11. Because the Plaintiff is wrongfully evicted and physically barred from entering the property at issue, they have been unable to conduct their normal business and earn their constitutionally protected livelihood.

## STATEMENT OF FACTS

12. In or about June of 2014, Plaintiff, invested their money into the aforementioned planting of almond trees, installed an irrigation system, and placed fencing as an investment for future profits. In addition, Plaintiffs harvested, watered, and cared for its investment of crops.

13. As stated, Plaintiff signed a lease agreement on the land to continue future investment of the business on the Subject Property. On or about February 18, 2016, Plaintiff filed a UCC-1 filing to protect their interest on the trees and crops. Thereafter, the property was foreclosed upon without Plaintiff being noticed or having a commercial Unlawful Detainer filed against them. Thus, Defendant took unlawful possession of the Subject Property.

**COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF**
4

14. Plaintiffs filed a UCC-1 to give notice to third party creditor's that there is potential interest in property owned by a debtor. The UCC-1 filing is a public record and a reasonable diligent search would have shown it had been filed by Plaintiff. Thus, the Defendants knew or should have known that the Plaintiff was a party of interest.

15. Because the Defendants knew that Plaintiff possessed the lease agreement on the land, Defendants should have, but failed to, serve upon the real parties in interest, Plaintiff, a notice to quiet the premises or alternatively, serve an Unlawful Detainer to them.

16. Plaintiff was in possession as a tenant on the Subject Property and an investor who adequacy protected itself even after the Defendants foreclosure. Defendant took the Subject Property subject to the tenancy.

17. Plaintiff claims that it holds title to the crops, irrigation system, and fencing on the Subject Property. Plaintiffs further claims that it holds equitable possession regardless of Defendants foreclosure pursuant to the lease agreement.

18. If Defendants desired to eject Plaintiffs off the property, they had every

**COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF**

5

right to file an Unlawful Detainer against Plaintiffs. However, Plaintiffs has

every right to defend themselves in such an Unlawful Detainer action, but was

denied the chance.

19. As such, Plaintiffs seek damages, punitive damages, and equitable relief

against all defendants, and each of them based upon UCC Article 9 and the

remedies available under UCC Article 2A.

## LEGAL STANDARDS

12 U.S. Code §3708 states:

The foreclosure commissioner shall serve the notice of default and

foreclosure sale provided for in section 3706 of this title upon the

following persons and in the following manner, and no additional

notice shall be required to be served notwithstanding any notice

requirements of any State or local law-

(1)The notice of default and foreclosure sale, together with the

designation required by section 3704 of this title, shall be sent by

certified or registered mail, postage prepaid and return receipt

requested, to the following persons:

**COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF**

(A) the current security property owner of record, as the record exists forty-five days prior to the date originally set for foreclosure sale, whether or not the notice describes a sale adjourned as provided in this chapter;

(B) the original mortgagor and all subsequent mortgagors of record or other persons who appear of record or in the mortgage agreement to be liable for part or all of the mortgage debt, as the record exists forty-five days prior to the date originally set for foreclosure sale, whether or not the notice describes a sale adjourned as provided in this chapter, except any such mortgagors or persons who have been released; and

(C) all persons holding liens of record upon the security property, as the record exists forty-five days prior to the date originally set for foreclosure sale, whether or not the notice describes a sale adjourned as provided in this chapter.

Notice under clauses (A) and (B) of this paragraph shall be mailed at least twenty-one days prior to the date of foreclosure sale, and shall be mailed to the owner or mortgagor at the address stated in the mortgage agreement, or, if none, to the address of the security property, or, at

**COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF**
7

the discretion of the foreclosure commissioner, to any other address believed to be that of such owner or mortgagor. Notice under clause (C) of this paragraph shall be mailed at least ten days prior to the date of foreclosure sale, and shall be mailed to each such lienholder's address as stated of record or, at the discretion of the foreclosure commissioner, to any other address believed to be that of such lienholder. Notice by mail pursuant to this subsection or section 3707(b) of this title shall be deemed duly given upon mailing, whether or not received by the addressee and whether or not a return receipt is received or the letter is returned.

(2) A copy of the notice of default and foreclosure sale shall be published, as provided herein, once a week during three successive calendar weeks, and the date of last publication shall be not less than four nor more than twelve days prior to the sale date. The information included in the notice of default and foreclosure sale pursuant to section 3706(a)(4) of this title may be omitted, in the foreclosure commissioner's discretion, from the published notice. Such publication shall be in a newspaper or newspapers having general circulation in the county or counties in which the security property

**COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF**

8

being sold is located. To the extent practicable, the newspaper or newspapers chosen shall be a newspaper or newspapers, if any is available, having circulation conducive to achieving notice of foreclosure by publication. Should there be no newspaper published at least weekly which has a general circulation in one of the counties in which the security property being sold is located, copies of the notice of default and foreclosure sale shall be posted in at least three public places in each such county at least twenty-one days prior to the date of sale.

(3) A copy of the notice of default and foreclosure sale shall be posted in a prominent place at or on the real property to be sold at least seven days prior to the foreclosure sale, and entry upon the premises for this purpose shall be privileged as against all persons. If the property consists of two or more noncontiguous parcels of land, a copy of the notice of default and foreclosure sale shall be posted in a prominent place on each such parcel. If the security property consists of two or more separate buildings, a copy of the notice of default and foreclosure sale shall be posted in a prominent place on each such building. Posting at or on the premises shall not be required where the

**COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF**

foreclosure commissioner, in the commissioner's sole discretion, finds

that the act of posting will likely cause a breach of the peace or that

posting may result in an increased risk of vandalism or damage to the

property.

## UCC ARTICLE 2A PART 5

### § 2A-508. LESSEE's REMEDIES

(1) If a lessor fails to deliver the goods in conformity to the lease

contract (Section 2A-509) or repudiates the lease contract (Section 2A-402),

or a lessee rightfully rejects the goods (Section 2A-509) or justifiably

revokes acceptance of the goods (Section 2A-517), then with respect to any

goods involved, and with respect to all of the goods if under an installment

lease contract the value of the whole lease contract is substantially impaired

(Section 2A-510), the lessor is in default under the lease contract and the

lessee may:  (a) cancel the lease contract (Section 2A-505(1)); (b) recover so

much of the rent and security as has been paid and is just under the

circumstances; (c) cover and recover damages as to all goods affected

whether or not they have been identified to the lease contract; (d) exercise

any other rights or pursue any other remedies provided in the lease contract.

(2) If a lessor fails to deliver the goods in conformity to the lease contract or repudiates the lease contract, the lessee may also if the goods have been identified, recover them (Section 2A-522); or (b) in a proper case, obtain specific performance or replevy the goods (Section 2A-521).

(3) If a lessor is otherwise in default under a lease contract, the lessee may exercise the rights and pursue the remedies provided in the lease contract, which may include a right to cancel the lease, and in Section 2A-519 (3)

(4) If a lessor has breached a warranty, whether express or implied, the lessee may recover damages (Section 2A-519 (4)

(5) On rightful rejection or justifiable revocation of acceptance, a lessee has a security interest in goods in the lessee's possession or control for any rent and security that has been paid and any expenses reasonably incurred in their inspection, receipt, transportation, and care and custody and may hold those goods and dispose of them in good faith and in a commercially reasonable manner, subject to Section 2A-527 (5).

(6) Subject to the provisions of Section 2A-407, a lessee, on notifying the lessor of

the lessee's intention to do so, may deduct all or any part of the damages

resulting from any default under the lease contract from any part of the rent

still due under the same lease contract.

## **ARGUMENT**

20.   Plaintiffs Incorporate Paragraphs 1 through 19 of this Complaint as

though fully set forth herein.

21. Plaintiffs are informed and believe that Defendant and each of them

failed to properly file and serve an Unlawful Detainer action against

them.

22. Plaintiffs have property rights as tenants to continue their tenancy on

their premises without interference until such time as Defendant proves

"just causes" to terminate the lease agreement and thus tenancy.

23. The Defendants also did not have authority to change any locks, remove

tenant's property from the leased piece of land, or order the tenant to

leave the property without a judgement from an Unlawful Detainer

court hearing.

24. As a further proximate result of Defendants' wrongful acts in causing

Plaintiff to vacate the premises, Plaintiffs have suffered loss of their

**COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF**

business, loss of future gains, and loss of the benefits of the lease agreement.

25. Plaintiff did not vacate the Premises and surrender possession and/or forfeit the lease agreement to the Defendants.

26. In order to end a lease agreement, a landlord must first send the tenant a notice stating that the tenancy has been terminated or the lease agreement has been violated. State laws set out very detailed requirements as to how a landlord must write and deliver (serve) a termination notice. The termination notice must, for eviction purposes, give the tenant a few days to pay rent or quit the premises (even after a foreclosure) in order to find a new location. This was not done here.

27. Defendant did not set forth proper notice, which is required to give the tenant a chance to respond to such notice and to avoid a lawsuit being filed against them.

28. State laws also requires landlords to prove legally that they have a right or just cause to terminate the lease agreement. Defendant did neither.

29. Defendant did nothing to mitigate its damages, meanwhile allowing the accumulation of Plaintiff damages.

**COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF**
13

# **CONCLUSION**

**WHEREFORE,** Plaintiffs pray for judgment against the all Defendants, and each of them as follows:

1. For any and all remedies available under UCC § 2A-508.

2. For Compensatory Damages in an amount to be determined by proof at trial;

3. For Special Damages in an amount to be determined by proof at trial;

4. That the Defendants and each of them, and their agents and successors, be stopped Forthwith from claiming any right to Plaintiffs personal property in question;

5. That Plaintiffs continue to exercise its lease agreement on the Subject Property and be allowed back onto the property.

6. Injunctive relief against any judicial determination regarding the subject property prior to the resolution of this action;

7. For Attorney Fees and Cost of the suit;

8.  For such other and further relief as this Honorable Court may deem fit and proper.

9. In the alternative and in the event that this Court finds that there is not

**COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF**

sufficient Federal Question to sustain this complaint, Plaintiff respectfully

requests that the court grant leave to amend this complaint to correct any

deficiencies herein.

DATED: February 2, 2018                    **GONZALEZ LAW GROUP A.P.C.**

                                           /s/ *Joseph D. Gonzalez*
                                           JOSEPH D. GONZALEZ
                                           Attorneys for Plaintiffs

**COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF**
15